UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

Barbara Tortomas,

                              Plaintiff,

- against -

Pall Corporation,

                            Defendant.

_____

Case No.
18-cv-05098-JMA-SIL

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE COMPLAINT**

Steven John Moser (SM1133)
MOSER LAW FIRM, P.C.
3 School Street, Suite 207B
Glen Cove, NY  11542
(516) 671-1150 * F (516) 882-5420
smoser@moseremploymentlaw.com
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

INTRODUCTION..................................................................................................... 1

FACTS ..................................................................................................................... 1

ARGUMENT ........................................................................................................... 3

    I.      EXTRA-JUDICIAL WAIVERS OF FLSA RIGHTS ARE UNENFORCEABLE...... 3

          A.      Pall cites non-controlling authority and ignores controlling authority. ............ 3

          B.      Controlling authority holds that extra-judicial releases of FLSA claims are unenforceable. ................................................................................................. 4

          C.      Representation by Counsel Is Immaterial to the Enforceability of an FLSA release ............................................................................................................ 5

          D.      Pall's Attempt to Distinguish *Cheeks* is Unpersuasive .................................... 6

    II.     AN EMPLOYEE'S RIGHT TO WAGES AND OVERTIME UNDER THE NYLL IS NON-WAIVABLE ........................................................................................ 7

          A.      According to the New York Court of Appeals, the Legislature has "foreclosed waiver" of wage claims under NYLL § 663 .................................................... 7

          B.      The New York State Department of Labor also considers NYLL wage provisions non-waivable. ................................................................................ 10

          C.      The NYLL is the state analogue to the FLSA and is interpreted in the same way, and it follows that extra-judicial releases of wage claims are equally prohibited by both. ......................................................................................... 11

    III.    THE PARTIES MUTUALLY UNDERSTOOD THAT THE PROVISIONS OF THE SEVERANCE AGREEMENT RELEASING PLAINTIFFS' WAGE CLAIMS WERE INVALID AND UNENFORCEABLE ......................................................... 14

    IV.    THE CONSEQUENCES OF BANNING EXTRA-JUDICIAL RESOLUTION ....... 16

    V.     THE SEVERANCE AGREEMENT IS NOT A SETTLEMENT OF A BONA FIDE WAGE AND HOUR DISPUTE. ............................................................................ 18

    VI.    PALL DRAFTED THE AGREEMENT TO PERMIT THE PLAINTIFF TO PURSUE WAGE CLAIMS TO THE EXTENT THAT THE WAIVER WAS UNENFORCEABLE. ............................................................................................... 19

CONCLUSION ...................................................................................................... 19

# Table of Cases

## Supreme Court Opinions

*A.H. Phillips, Inc. v. Walling,*
  324 U.S. 490, 493, 65 S. Ct. 807, 89 L. Ed. 1095 (1945) ........................................................ 6

*Barrentine v. Ark.-Best Freight Sys.,*
  450 U.S. 728, 101 S. Ct. 1437 (1981) ...................................................................... 4

*Brook. Sav. Bank v. O'Neil,*
  324 U.S. 697, 65 S. Ct. 895 (1945) ................................................... 1, 4, 8, 10, 12

*Camreta v. Greene,*
  563 U.S. 692, 131 S. Ct. 2020 (2011) ...................................................................... 3

*D.A. Schulte, Inc. v. Gangi,*
  328 U.S. 108 (1946) ...................................................................................... 4, 5

*Overnight Motor Transp. Co. v. Missel,*
  316 U.S. 572 (1942) ............................................................................................ 4

*Walling v. Helmerich & Payne, Inc.,*
  323 U.S. 37 (1944) ............................................................................................. 4

*Walling v. Portland Terminal Co.,*
  330 U.S. 148, 67 S. Ct. 639 (1947) ........................................................................ 4

## Second Circuit Opinions

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
  547 F.3d 109 (2d Cir. 2008) .................................................................................. 3

*Bormann v. AT & T Commc'ns, Inc.,*
  875 F.2d 399 (2d Cir. 1989) .................................................................................. 5

*Catzin v. Thank You & Good Luck Corp.,*
  899 F.3d 77 (2d Cir. 2018) ................................................................................. 12

*Cheeks v. Freeport Pancake House, Inc.,*
  796 F.3d 199 (2d Cir. 2015) ......................................................... 5, 6, 7, 16, 18

*Coley v. Vannguard Urban Improvement Ass'n,*
  No. 12-CV-5565 (PKC) (RER), 2018 U.S. Dist. LEXIS 54609 (E.D.N.Y. Mar. 29, 2018) .. 12

*Fleming v. Post,*
  146 F.2d 441 (2d Cir. 1944) .................................................................................. 4

*Funez v. Triple S Mason Contrs., Inc.,*
  No. 16-CV-06912 (JMA) (SIL), 2019 U.S. Dist. LEXIS 36941 (E.D.N.Y. Mar. 7, 2019) ... 11

*Gaughan v. Rubenstein,*
   261 F. Supp. 3d 390 (S.D.N.Y. 2017) ................................................................ 3, 5

*Glatt v. Fox Searchlight Pictures, Inc.,*
   811 F.3d 528 (2d Cir. 2015) ................................................................ 12

*Matamoro v. Khomari,*
   No. 16-cv-9004 (KBF), 2017 WL 6542954 (S.D.N.Y. Dec. 19, 2017) ................................. 3

*Muhammed Chowdhury v. Hamza Express Food Corp.,*
   666 F. App'x 59 (2d Cir. 2016) ................................................................ 13

*Picerni v. Bilingual Seit & Preschool, Inc.,*
   925 F. Supp. 2d 368 (E.D.N.Y. 2013) ................................................................ 4

*Rodriguez v. Queens Convenience Deli Corp.*
   No. 09-cv-1089(KAM)(SMG), 2011 U.S. Dist. LEXIS 120478, 2011 WL 4962397 ..... 12-13

*Santillan v. Henao,*
   822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011) ................................................................ 13

*Saucedo v. On the Spot Audio Corp.*
   No. 16 CV 00451 (CBA) (CLP), 2016 U.S. Dist. LEXIS 177680, 2016 WL 8376837 ......... 13

*Simel v. JP Morgan Chase,*
   No. 05 CV 9750 (GBD), 2007 U.S. Dist. LEXIS 18693 (S.D.N.Y. Mar. 19, 2007) ....... 7, 8, 9

*Socias v. Vornado Realty L.P.,*
   297 F.R.D. 38 (E.D.N.Y. 2014)(emphasis supplied) ................................................................ 6

*Spanos Painting Contractors, Inc. v. Union Bldg. & Constr. Corp.,*
   334 F.2d 457 (2d Cir. 1964) ................................................................ 5

**Federal Court Opinions**

*Gambrell v. Weber Carpet, Inc.,*
   No. 10-2131-KHV, 2012 WL 162403 (D. Kan. Jan. 19, 2012) ................................. 17

**State Cases**

*Am. Broad. Cos. v. Roberts,*
   61 N.Y.2d, 461 N.E.2d 856, 473 N.Y.S.2d 370 (1984) ................................. 9, 11

*Andryeyeva v. N.Y. Health Care, Inc.,*
   124 N.E.3d 162, 2019 N.Y. Slip Op. 02258, 33 N.Y.3d 152, 175, 100 N.Y.S.3d 612, 623
   (2019) ................................................................ 10

*Delisi v. Ficarrotta,*
   76 Misc. 488, 135 N.Y.S. 653 (N.Y. Sup. Ct. 1912) ................................. 15

*People v. Bloom*,
    7 Misc. 2d 1077, 167 N.Y.S.2d 179 (1957) ........................................................... 11

*Samiento v. World Yacht Inc.*,
    10 N.Y.3d 70 (2008) ............................................................................................ 10

## INTRODUCTION

[T]he [] wages of labour, depends everywhere upon the contract usually made between [workmen and masters]. The workmen desire to get as much, the masters to give as little as possible. . .  It is not, however, difficult to foresee which of the two parties must, upon all ordinary occasions, have the advantage in the dispute, and force the other into a compliance with their terms. . . A landlord, a farmer, a master manufacturer, a merchant, though they did not employ a single workman, could generally live a year or two upon the stocks which they have already acquired. Many workmen could not subsist a week, few could subsist a month, and scarce any a year without employment. In the long run the workman may be as necessary to his master as his master is to him; but the necessity is not so immediate.

- Adam Smith, Wealth of Nations, Book I (1776).

Before the passage of the FLSA, the unequal bargaining power inherent in negotiations between laborers and employers led to widespread child labor, long hours, and near-starvation wages for millions of Americans.[1]  On June 25, 1938 the FLSA, which established a minimum wage, a 40 hour workweek and outlawed child labor was signed by FDR.  "[T]he statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency."  *Brook. Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945).

## FACTS

Barbara Tortomas worked for the Pall Corporation for more than 32 years.[2]  On June 27, 2017 Pall informed her that her position was being eliminated and her last day would be June 30, 2017.[3]  She was 60 years old.[4]

---

[1] Nathaniel Ruby and Ross Eisenbrey, Economic Policy Institute Working Economics Blog, *Celebrating 75 Years of the Fair Labor Standards Act* (June 25, 2013), available at https://www.epi.org/blog/celebrating-75-years-fair-labor-standards/.
[2] Declaration of Barbara Tortomas ¶ 2.
[3] Tortomas Decl. ¶ 3.
[4] Tortomas Decl. ¶ 4.

Pall offered Ms. Tortomas a severance package amounting to one week of pay for every year of service.[5]  This type of severance package was offered to all employees as part of Pall's reduction in force plan.[6]  It was not based upon any computation of overtime or the merit of legal claims that the employee may have against Pall.[7]

Ms. Tortomas signed a severance agreement in June 2017.[8]  Shortly after signing the severance agreement, Ms. Tortomas sought legal representation.[9]  She was advised by counsel that the provisions relating to the release of wage claims were unenforceable and invalid.[10]

Pall had previously given Ms. Tortomas the title of "IT Administrator" and eliminated her overtime pay.[11]  Her title of "IT Administrator" suggests that Pall classified her as an exempt "computer systems analyst, computer programmer, software engineer, or other similarly skilled worker" under 29 U.S.C. § 213(a)(17).  However, Ms. Tortomas does not have a degree in information technology or knowledge of information technology systems.[12]  She did not perform the exempt duties required of a computer professional under the FLSA.[13]  She was therefore entitled to payment for all hours worked, overtime, and liquidated damages.

Although Ms. Tortomas could have simply accepted the severance and sued to recover damages on her statutory wage claims, she revoked the severance agreement on July 31, 2017, and advised Pall that the severance agreement contained an impermissible waiver of statutory claims.[14]  Pall did not dispute that the waiver of wage claims was invalid and accepted the

---

[5] Tortomas Decl. ¶ 6.
[6] Tortomas Decl. ¶¶ 6-8; Declaration of Steven J. Moser ¶¶ 10-11.
[7] *Id.*
[8] Tortomas Decl. ¶ 10.
[9] Tortomas Decl. ¶ 11.
[10] Tortomas Decl. ¶ 12.
[11] Tortomas Decl. ¶ 9.
[12] *Id.*
[13] *Id.*
[14] Tortomas Decl. ¶¶ 12-14; Moser Decl. ¶ 5.

revocation.[15]  On September 22, 2017 Ms. Tortomas's counsel furnished a letter to Pall's General Counsel.[16]  That letter notified Pall that the waiver of wage claims was invalid for the second time, and made a demand for compensation.[17]  Pall never responded that the wage release was valid.[18]

In November 2017, Barbara Tortomas executed the severance agreement with the understanding that the provisions relating to the waiver of wage claims were invalid, and that therefore the severance was not compensation for wage claims.[19]

On September 10, 2018, Plaintiff commenced this action to remedy violations of the NYLL and the FLSA.  Defendant now moves to dismiss, claiming that a wavier of FLSA and NYLL statutory rights in a severance agreement without specific compensation for wages or other damages is permissible.  The severance agreement invoked by the Defendant contains an express waiver of the right to pursue wage claims.[20]

## ARGUMENT

## I.   EXTRA-JUDICIAL WAIVERS OF FLSA RIGHTS ARE UNENFORCEABLE.

### A.  Pall cites to non-controlling authority and ignores controlling authority.

"District court decisions, unlike the decisions of States' highest courts and federal courts of appeals, are not precedential in the technical sense: they. . .create no rule of law binding on other courts." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 547 F.3d 109, 112 (2d Cir. 2008).  "A decision of a federal district court judge is not binding precedent in either a different judicial

---

[15] Moser Decl. ¶ 6.
[16] Moser Decl. ¶ 7;
[17] *Id.*
[18] Moser Decl. ¶ 9.
[19] Tortomas Decl. ¶¶ 18-19.
[20] *See* Severance Agreement, Section 2.

district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011).

Pall cites to two District Court decisions for the proposition that a pre-litigation waiver of FLSA claims is valid.[21]  Pall asserts that "the Second Circuit has yet to consider pre-litigation releases" of FLSA claims.  In doing so, Pall ignores controlling authority.

### B.  Controlling authority holds that extra-judicial releases of FLSA claims are unenforceable.

This Court's decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the Act. Thus, we have held that FLSA rights cannot be abridged by contract or otherwise waived. Thus, we have held that FLSA rights cannot be abridged by contract or otherwise waived because this would "nullify the purposes" of the statute and thwart the legislative policies it was designed to effectuate.

*Barrentine v. Ark.-Best Freight Sys.*, 450 U.S. 728, 740, 101 S. Ct. 1437, 1445 (1981)(citing *Brook. Sav. Bank*, 324 U.S. at 707; *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 114-16 (1946), *Walling v. Helmerich & Payne, Inc., 32*3 U.S. 37, 42 (1944), and *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572 (1942) 29 C.F.R. § 785.8).  These rights are "best protected" in a judicial forum.  *Barrentine*, 450 U.S. at 729, 101 S. Ct. at 1439.

Judge Cogan described *Brooklyn Savings Bank v. O'Neil* and *D. A. Schulte, Inc. v. Gangi* as "[t]wo venerable Supreme Court decisions [that] make it clear that an employer who settles an FLSA claim without either Department of Labor or court approval is at risk of a subsequent suit by the same employee, even if the employer receives a release as part of the settlement agreement." *Picerni v. Bilingual Seit & Preschool, Inc., 92*5 F. Supp. 2d 368, 371 (E.D.N.Y. 2013).

---

[21] *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390 (S.D.N.Y. 2017) and *Matamoro v. Khomari*, No. 16-cv-9004 (KBF), 2017 WL 6542954 (S.D.N.Y. Dec. 19, 2017).

4

Justice Robert H. Jackson summarized Supreme Court's interpretation of the FLSA as follows:

> We have held the individual employee incompetent to compromise or release any part of whatever claim he may have [under the FLSA]. No kind of agreement between the parties in interest settling borderline cases in a way satisfactory to themselves, however fairly arrived at, is today worth the paper it is written on.

*Walling v. Portland Terminal Co.*, 330 U.S. 148, 155, 67 S. Ct. 639, 642-43 (1947)(concurring)(citing *Brook. Sav. Bank*, 324 U.S. 697; *D.A. Schulte, Inc.*, 328 U.S. 108).

The Second Circuit's position regarding extra-judicial settlement of FLSA rights is clear: "We think there can be no valid release of the right to the payment of the back minimum and overtime wages." *Fleming v. Post*, 146 F.2d 441, 443 (2d Cir. 1944). "[P]rivate waiver of claims under the [FLSA] has been precluded by such Supreme Court decisions as *Brook. Sav. Bank*, 324 U.S. 697, and *D.A. Schulte, Inc.*, 328 U.S. 108." *Bormann v. AT & T Commc'ns, Inc.,* 875 F.2d 399, 401 (2d Cir. 1989); *see also Spanos Painting Contractors, Inc. v. Union Bldg. & Constr. Corp., 33*4 F.2d 457, 459 (2d Cir. 1964) ("To permit a laborer to waive his rights under the act would undermine the very purpose of fair labor legislation.").

### C.  Representation by Counsel Is Immaterial to the Enforceability of an FLSA release

Pall celebrates the fact that Ms. Tortomas was represented by counsel at the time the severance agreement was signed.  However, Pall fails to advise the court that it communicated directly with Ms. Tortomas even after it was advised that Ms. Tortomas was represented by counsel.  Regardless, the Second Circuit expressly rejected the idea that representation by counsel offers sufficient protection of an employee's FLSA rights.  "[T]he need for such employee protections, even where the employees are represented by counsel, remains." *Catholic Health Care Sys. v. Burwell*, 796 F.3d 207, 207 (2d Cir. 2015).

### D.  Pall's Attempt to Distinguish *Cheeks* is Unpersuasive

Pall asserts that *Cheeks* is inapplicable because it "applies only to settlement agreements that occur within the context of Rule 41" and therefore does not apply to pre-litigation settlement agreements.  *See* Defendant's Memorandum of Law, at 7 (citing *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 400 (S.D.N.Y. 2017)).  Since the release is prohibited by Supreme Court cases and Second Circuit precedent other than *Cheeks*, it makes little difference whether *Cheeks* applies outside of Rule 41.  *See* Controlling authority holds that extra-judicial releases of FLSA claims are unenforceable, *supra.*  Nevertheless, *Cheeks* stands for the proposition that extra-judicial settlements are impermissible.

In Cheeks the issue was whether the parties may enter into a "private stipulated dismissal of FLSA claims with prejudice, without the involvement of the district court or DOL, that may later be enforceable." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 204 (2d Cir. 2015). The Second Circuit answered "No" and gave several reasons why:

- Requiring Judicial oversight of an FLSA settlement is consistent with the FLSA's purpose "to extend the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work." *Cheeks*, 796 F.3d at 206 (citing A.H. Phillips, Inc. v. Walling, 324 U.S. 490, 493, 65 S. Ct. 807, 89 L. Ed. 1095 (1945)).

- "[T]he FLSA is a uniquely protective statute" (Id. at 207) - so unique that "the purposes of FLSA require that it be applied even to those who would decline its protections." *Id.* at 205.

- "[E]mployees, even when represented in the context of a pending lawsuit, often face extenuating economic and social circumstances and lack equal bargaining power; therefore, they are more susceptible to coercion or more likely to accept

6

unreasonable, discounted settlement offers quickly. In recognition of this problem, the FLSA is distinct from all other employment statutes." *Cheeks*, 796 F.3d at 205 (quoting *Socias v. Vornado Realty L.P.*, 297 F.R.D. 38, 40 (E.D.N.Y. 2014)(emphasis supplied).

- "Without judicial oversight, . . . employers may be more inclined to offer, and employees, even when represented by counsel, may be more inclined to accept, private settlements that ultimately are cheaper to the employer than compliance with the Act." *Cheeks*, 796 F.3d at 205-06

- Therefore, permitting dismissal with prejudice without judicial oversight "would permit defendants to circumvent the FLSA's 'deterrent effect' and eviscerate FLSA protections." Id. at 206 (citing *Armenta v. Dirty Bird Grp., L.L.C.*, No. 13cv4603, 2014 U.S. Dist. LEXIS 93334, at *4 (S.D.N.Y. June 27, 2014)

All of the Second Circuit's concerns in *Cheeks* focused on the need for judicial oversight of settlements.  All of the reasons given by the Second Circuit concerning the need for judicial oversight apply with equal force to pre-litigation and post-commencement settlements. Otherwise, an employer could simply circumvent FLSA and NYLL rights by entering into a pre-litigation release.

## II.    AN EMPLOYEE'S RIGHT TO WAGES AND OVERTIME UNDER THE NYLL IS NON-WAIVABLE

### A.  According to the New York Court of Appeals, the Legislature has "foreclosed waiver" of wage claims under NYLL § 663

Pall cites no controlling authority for the proposition that NYLL wage claims are waivable.  Instead, Pall cites to numerous District Court decisions, beginning with *Simel*, 2007 U.S. Dist. LEXIS 18693 (2007), for the proposition that broad waivers of NYLL claims are

7

permissible.[22]  But *Simel* and its progeny are neither controlling nor persuasive.  In fact, the

controlling authority cited in *Simel* actually stands for the proposition that NYLL overtime

claims are not waivable.

In *Simel*, Judge Daniels cited to the New York State Court of Appeals for the following

proposition:

> When a statute itself contains no express provisions precluding waiver of its benefits, "no
> overriding public policy [] prevents waiver or modification of the precise statutory terms,
> so long as the legislative purpose is not undermined."

*Simel*, 2007 U.S. Dist. LEXIS 18693, at *13 (citing *Am. Broad. Cos. v. Roberts*, 61 N.Y.2d 244,

249, 461 N.E.2d 856, 473 N.Y.S.2d 370 (1984)).  Judge Daniels concluded that releases of

NYLL claims were permitted because "[t]he New York State law provisions on which

defendant's [sic.] claims rely do not contain express provisions restricting the private settlement

of claims or waiver of statutory rights."  *Simel*, 2007 U.S. Dist. LEXIS 18693, at *14.

A careful reading of *American  Broadcasting* (61 N.Y.2d at 249, 461 N.E.2d 856, 473

N.Y.S.2d 370) leads to the opposite conclusion.   In *American Broadcasting*, the employees'

union and the employer negotiated benefits for employees in place of an evening 20-minute meal

period required by NYLL § 162.  The Department of Labor issued a notice of violation of NYLL

§ 162, arguing that statutory rights under the New York Labor Law could not be waived by

agreement between the employer and the employees.

The Court of Appeals disagreed, holding that "waiver or modification of such a statutory

benefit will be permissible to the extent that it can be ascertained that the legislative purpose is

not contravened."*Am. Broad. Cos.*, 61 N.Y.2d at 249, 461 N.E.2d at 372, 473 N.Y.S.2d at 858

(citing *Brook. Sav. Bank*, 324 U.S. at 704)).  Of course, if the legislature has precluded waiver,

---

[22] District courts holding that broad waivers of NYLL claims are valid almost universally cite to *Simel* as
the basis for their holding.

the courts are without authority to find statutory rights waived. *Id.*   On the other hand, if the legislature has not expressly precluded waiver, a court may only find that a waiver is permitted if it does not undermine the legislative purpose of the statute.  *Id.*  .

The Court of Appeals observed that several sections of the New York Labor Law show that the legislature is aware of its ability to prevent waiver of statutory protections:

> Notwithstanding the Legislature's ability to foreclose waiver of the provisions of the Labor Law (Labor Law, §§ 650, 662, subd 2; <u>§ 663, subds 1, 2 [minimum wage];</u> § 595, subd 1 [unemployment insurance benefits]), [section 162 of the labor law requiring meal periods] contains no express prohibition against waiver.

*Id.* (emphasis supplied).  According to the Court of Appeals, unlike the law relating to meal periods (NYLL § 162), the law relating to the payment of minimum wages and overtime (NYLL § 663) contains an "express prohibition against waiver" and is an example of "the Legislature's ability to foreclose waiver of the provisions of the Labor Law."  *Am. Broad. Cos.*, 61 N.Y.2d at 250, 461 N.E.2d 856, 473 N.Y.S.2d 370.

Section 663 states:

> If any employee is paid by his or her employer less than the wage to which he or she is entitled under the provisions of this article, he or she shall recover in a civil action the amount of any such underpayments, together with costs all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due. Any agreement between the employee, and the employer to work for less than such wage shall be no defense to such action.

The "wages" referred to in NYLL § 663 include overtime wages under 12 NYCRR 142-212. *See Simel*, 2007 U.S. Dist. LEXIS 18693, at *14 ("The New York State Minimum Wage Act [Article 19, NYLL §§ 650 et. seq.], encompasses plaintiff's claim for overtime wages."); N.Y. Lab. Law § 2(16)(Under the NYLL the term "article" includes any "regulation or order promulgated thereunder or related thereto.").

9

Wages also include straight wages which are owed under NYLL § 191.  And just like NYLL § 663, section 191 prohibits waiver of its provisions.  NYLL § 191(2)("No employee shall be required. . .to accept wages [] other than as provided in this section.").

If, according to NYLL § 663, an agreement between the employer and the employee to work for less than the wages required by law is no defense, how can an agreement to resolve wage claims for less than the full amount required by law be a defense?  An agreement to resolve wage claims is an acceptance by an employee of wages.  To the extent the offered "wages" do not fully compensate the employee for wages, liquidated damages, and other damages, the agreement is invalid.

In short, because (as recognized by the Court of Appeals), NYLL § 663 contains an express prohibition against waiver, the Plaintiff's rights cannot be abrogated by private agreement.

### B.  The New York State Department of Labor also considers NYLL wage provisions non-waivable.

The New York Court of Appeals "give[s] weight to [the New York State Department of Labor's] opinion letters when deciding whether to defer both to DOL's interpretation of its own regulations as well as the Labor Law." *Andryeyeva v. N.Y. Health Care, Inc.*, 124 N.E.3d 162, 173, 2019 N.Y. Slip Op. 02258, 33 N.Y.3d 152, 175, 100 N.Y.S.3d 612, 623 (2019).  This "deferential standard" is "well settled" and <u>courts must defer to an administrative agency's rational interpretation of its own regulations in its area of expertise."</u>  *Andryeyeva*, 124 N.E.3d at 173(emphasis supplied)*; Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 79 (2008)("Labor Department's interpretation of a statute it is charged with enforcing is entitled to deference" and the "construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld").

The Department of Labor has concluded that the protections of Article 19 of the Labor

Law and Section 191 are not waivable.

> [T]he provisions contained within the Minimum Wage Act (Article 19) of the New York
> State Labor Law, related regulations, and administrative policies or procedures, are not
> waivable through collective bargaining agreement or otherwise. This conclusion gains further
> support from the fact that the Federal courts have unanimously ruled that the minimum wage
> and overtime provisions of the Fair Labor Standards Act may not be waived by the employee
> or through collective bargaining based on the fact that Congress intended to make them
> mandatory and not subject to waiver.
> . . .
> Similarly, Section 191 of the Labor law, . . .was enacted to assure employees' prompt and
> expeditious payment of wages notwithstanding a contract to provide otherwise. . .
> Furthermore, Section 191, by its terms, provides that "no employee shall be required to
> accept wages at periods other than as provided in this section." (Labor Law §191 (2.).) As
> such, it is the opinion of this Department that Section 191 of the Labor Law cannot be waived
> [] as the Legislature has clearly expressed the intention that waiver be precluded.

New York State Department of Labor Opinion Letter RO-09-0083 (March 1, 2010)[23].

### C. The NYLL is the state analogue to the FLSA and is interpreted in the same way, and it follows that extra-judicial releases of wage claims are prohibited equally by both.

It is no accident that both the New York Court of Appeals and the New York State

Department of Labor cite to *Brooklyn Savings Bank v. O'Neil* in determining whether the wage

payment provisions of the NYLL are waivable.  *See Am. Broad. Cos.*, 61 N.Y.2d at 250, 461

N.E.2d at 373, 473 N.Y.S.2d at 859; DOL Opinion Letter RO-09-0083.

The legislative finding and declaration of Article 19 of the NYLL states:

> There are persons employed in some occupations in the state of New York at wages
> insufficient to provide adequate maintenance for themselves and their families. Such
> employment impairs the health, efficiency, and well-being of the persons so employed,
> constitutes unfair competition against other employers and their employees, threatens the
> stability of industry, reduces the purchasing power of employees, and requires, in many
> instances, that wages be supplemented by the payment of public moneys for relief or
> other public and private assistance. Employment of persons at these insufficient rates of
> pay threatens the health and well-being of the people of this state and injures the overall
> economy.

---

[23] Annexed to the Moser Declaration as Exhibit 3.

Accordingly, it is the declared policy of the state of New York that such conditions be eliminated as rapidly as practicable without substantially curtailing opportunities for employment or earning power. To this end minimum wage standards shall be established and maintained.

N.Y. Lab. Law § 650.

Of course, the purpose of the NYLL could be undermined by the delayed payment of wages.   Therefore, the New York Legislature enacted section 191 of the Labor Law, which guarantees both the timely payment of wages and the payment of all straight wages. *Funez v. Triple S Mason Contrs., Inc.*, No. 16-CV-06912 (JMA) (SIL), 2019 U.S. Dist. LEXIS 36941, at *1 (E.D.N.Y. Mar. 7, 2019); *People v. Bloom*, 7 Misc. 2d 1077, 1078 (1957).

The legislative findings and purpose of the NYLL are virtually identical to those of the FLSA.

(a) The Congress hereby finds that the existence, in industries engaged in commerce or in the production of goods for commerce, of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers (1) causes commerce and the channels and instrumentalities of commerce to be used to spread and perpetuate such labor conditions among the workers of the several States; (2) burdens commerce and the free flow of goods in commerce; (3) constitutes an unfair method of competition in commerce; (4) leads to labor disputes burdening and obstructing commerce and the free flow of goods in commerce; and (5) interferes with the orderly and fair marketing of goods in commerce…

(b) It is hereby declared to be the policy of this Act [29 USCS §§ 201 et seq., generally; for full classification, consult USCS Tables volumes], through the exercise by Congress of its power to regulate commerce among the several States and with foreign nations, to correct and as rapidly as practicable to eliminate the conditions above referred to in such industries without substantially curtailing employment or earning power.

29 U.S.C.S. § 202.

If a "waiver of statutory wages by agreement would nullify the purposes of the [FLSA]" (Brook. Sav. Bank, 324 U.S. at 707, 65 S. Ct. 895) it follows that such an agreement would nullify a state statute that has the identical purposes of the FLSA."

12

District Courts within the "Second Circuit have interpreted the definition of employer under the NYLL coextensively with the definition used by the FLSA, and have regularly applied the same factors and tests to determine whether entities are joint employers under the NYLL." *Coley v. Vannguard Urban Improvement Ass'n*, No. 12-CV-5565 (PKC) (RER), 2018 U.S. Dist. LEXIS 54609, at *1 (E.D.N.Y. Mar. 29, 2018). The FLSA and NYLL similarly define "employee" in "nearly identical terms." *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 534 (2d Cir. 2015). The "NYLL and FLSA liquidated damages provisions are materially identical." *Catzin v. Thank You & Good Luck Corp., 89*9 F.3d 77, 83 (2d Cir. 2018). Under both the FLSA and NYLL, an employer is required to maintain "records of the wages, hours, and persons employed by him." *Rodriguez v. Queens Convenience Deli Corp.* (*SMG*), No. 09-cv-1089(KAM)(SMG), 2011 U.S. Dist. LEXIS 120478, 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011).

The Second Circuit has observed that the New York legislature has twice amended the NYLL to conform to the FLSA. *Muhammed Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59, 61 (2d Cir. 2016). "The NYLL and the FLSA are analytically nearly identical.*"* *Saucedo v. On the Spot Audio Corp.* (*CLP*), No. 16 CV 00451 (CBA) (CLP), 2016 U.S. Dist. LEXIS 177680, 2016 WL 8376837, at *6 (E.D.N.Y. Dec. 21, 2016), report and recommendation adopted, 16-CV-451(CBA)(CLP), 2017 U.S. Dist. LEXIS 28089, 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017)*;see Santillan v. Henao*, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011) (NYLL is the "state analogue" to the FLSA and "otherwise mirrors the FLSA in compensation provisions regarding minimum hourly wages and overtime"). Moreover, the miscellaneous industry wage order incorporates the FLSA by reference. *See* 12 NYCRR 142-2.2.

Because the NYLL and the FLSA are substantially similar, are similarly interpreted, and have the same purpose, it follows that a waiver of their statutory provisions would similarly undermine their purposes and is equally prohibited.

## III.   THE PARTIES MUTUALLY UNDERSTOOD THAT THE PROVISIONS OF THE SEVERANCE AGREEMENT RELEASING PLAINTIFFS' WAGE CLAIMS WERE INVALID AND UNENFORCEABLE

The severance payment offered to the Plaintiff was a "one-size-fits-all" mathematical calculation based upon the number of years of employment.[24]  No part of the severance represented specific compensation for wage and hour claims.   There was never any additional consideration paid by Pall after plaintiff demanded compensation for her wage claims under the FLSA and the NYLL.[25]

Plaintiff could have accepted the initial severance pay and immediately sued for recovery of wages.  However, as a courtesy to Pall, she revoked the severance agreement and requested compensation for unpaid wages and overtime.[26]  The revocation letter put Pall on notice that the provisions of the severance agreement relating to the release of wage claims were unenforceable.[27]

On September 22, 2017, Plaintiff's counsel sent a letter to Pall's General Counsel, advising Pall for the second time that the provisions of the agreement relating to the release of wage claims were invalid and unenforceable.[28]  Pall never disputed Plaintiff's understanding of the agreement.[29]

---

[24] Tortomas Decl. ¶¶ 5-8; Moser Decl. ¶11.
[25] Tortomas Decl. ¶ 17.
[26] Tortomas Decl. ¶ 13-14; Moser Decl. ¶ 5.
[27] Moser Decl. ¶ 5.
[28] Moser Decl. ¶ 7-8.
[29] Moser Decl. ¶ 9; Tortomas Decl. ¶ 15.

When she signed the agreement in November 2017, the Plaintiff understood that the provisions of the agreement regarding the release of her wage claims were invalid.  Therefore, the severance represented compensation for non-wage claims.[30]

Pall does not say that it believed the wage release was enforceable.  Pall is part of a highly sophisticated organization.  It is a wholly owned subsidiary of Danaher Corporation, which boasts $18 Billion in annual sales and $50 Billion in assets.[31]  It has 68,000 employees (23,000 in the United States and 45,000 abroad).[32]

Pall's counsel knew that the release was unenforceable and invalid.  Seyfarth & Shaw published an article on July 18, 2017, warning,

> In the Second Circuit and elsewhere, releases of FLSA rights require approval, and agreements submitted for judicial approval are subjected to close scrutiny that is difficult to bypass.  [. . .] DOL approval doesn't make the process any easier.  [E]mployers may not [even] be able to obtain true finality in [DOL-supervised] settlements and may still face the risk of subsequent litigation.

Robert S. Whitman and Howard M. Wexler, *Money for Nothing! Court Allows Employees to Pursue Lawsuit Despite DOL Settlement* (2017), Seyfarth Shaw Wage & Hour Litigation Blog, https://www.wagehourlitigation.com/settlement/money-for-nothing-court-allows-employees-to-pursue-lawsuit-despite-dol-settlement/ (last visited August 7, 2019)(emphasis supplied).

In short, Pall and the Plaintiff were operating with the understanding that the wage and hour release in the severance agreement was unenforceable and not binding upon the Plaintiff. The severance agreement, like all contracts should be "enforced [based] upon the mutual understanding of the parties." *Delisi v. Ficarrotta*, 76 Misc. 488, 496 (N.Y. Sup. Ct. 1912).

---

[30] Tortomas Decl. ¶ 18-19.
[31] *See  "US SEC: Form 10-K Danaher Corporation", U.S. Securities and Exchange Commission* (available at https://www.sec.gov/Archives/edgar/data/313616/000031361618000038/dhr-20171231x10xk.htm (last visited August 12, 2019).
[32] *Id.*

**IV.     THE CONSEQUENCES OF BANNING EXTRA-JUDICIAL RESOLUTION**

Of course, if there is no certainty that an out of court settlement will be enforced, parties will be hesitant to settle claims before a lawsuit is filed.  This encourages litigation, rather than the settlement of disputes.

The defense has compared wage and hour litigation to a disease.  *See* Richard L. Alfred, *The Wage and Hour Litigation Epidemic Continues* (2014), https://www.seyfarth.com/ publications/4232 (last visited August 6, 2019).  But studies have shown that even with the threat of litigation, employers continue to steal billions from workers.  David Cooper, *Employers steal billions from workers' paychecks each year* (2017), Economic Policy Institute, https://www.epi.org/publication/employers-steal-billions-from-workers-paychecks-each-year-survey-data-show-millions-of-workers-are-paid-less-than-the-minimum-wage-at-significant-cost-to-taxpayers-and-state-economies/ (last visited August 6, 2019).

The appellate courts seem to be unpersuaded that an employee's right to wages is simply another type of claim which can be resolved by "consenting adults."  In *Cheeks,* the Second Circuit openly stated that even where employees are represented by counsel, the protection of their interests cannot be entrusted to their attorneys.  The Second Circuit cited specific examples of previous settlement proposals that showed the potential for abuse. These included:

- Settlement agreements that contain releases for other than wage claims (in other words, in which employers were getting more than they paid for);

- Settlement agreements that contain confidentiality provisions, which are offensive to the FLSA;

- Attorneys fees' in excess of 1/3 of the settlement amount without adequate documentation;

- Settlements which contain a promise by Plaintiff's counsel that they will not represent other employees against the employer (and presumably for a premium payment to Plaintiff and Plaintiff's counsel); and

- Settlements in which employees resolved their claims for less than actual amount owed due to immediate financial need.

*Cheeks*, 796 F.3d at 206.  Although the Second Circuit explained what was impermissible, the Court did not set a standard by which an FLSA settlement should be evaluated, as this issue was not before the Court.

Parties should have at least some capacity to resolve claims out of Court.  Much of the concern regarding extra-judicial settlements is their secrecy and potential unfairness.  These concerns could be allayed by well-documented extra-judicial resolution.  A well-documented settlement might well include:

- Evidence that both employer and employee were represented by experienced FLSA counsel;

- The employee's demand letter outlining the basis for the legal claims;

- The employee's damage calculations, and the assumptions forming the basis for the calculations;

- The employer's anticipated defenses to the legal claims;

- The employer's damage calculations or and the assumptions forming the basis for the employer's calculations;

- All payroll records and time clock records in the employer's possession custody and control, or a statement that no such documentation exists;

- In the event that attorneys' fees exceed 1/3 of the settlement amount, contemporaneous billing records;

- If the settlement is for less than the full amount of wages and liquidated damages, the percentage reduction, and details regarding the bona fide dispute between the parties that led to the reduction.

Some courts have required that where an employer attempts to resolve FLSA claims for less than the full amount, the parties should submit evidence that there is a *bona fide* wage and hour dispute in the following form:

(1) a description of the nature of the dispute (for example, a disagreement over coverage, exemption or computation of hours worked or rate of pay); (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage.

*Gambrell v. Weber Carpet, Inc.*, No. 10-2131-KHV, 2012 WL 162403 (D. Kan. Jan. 19, 2012).

If such documentation was kept, a defendant could move for approval of a settlement and dismissal in response to a complaint and could be reasonably certain that the motion would be granted.  At least in that case (unlike here) a defendant could argue that it was not attempting to circumvent the FLSA.

## V.    THE SEVERANCE AGREEMENT IS NOT A SETTLEMENT OF A BONA FIDE WAGE AND HOUR DISPUTE.

In this case, the Defendant does not argue that the Court should approve the severance agreement as a *bona fide* wage and hour settlement.  The severance agreement does not designate any portion of the severance pay as compensation for wage and hour claims.  One important purpose behind judicial approval is to deter "private settlements that ultimately are cheaper to the employer than compliance with the Act." *Cheeks*, 796 F.3d at 205-06.  The Defendant has

furnished no evidence that there was even a bona fide wage and hour dispute, much less that the

severance agreement represents a compromise of wage and hour claims.  In fact, no additional

compensation was paid for wage and hour claims after these claims were raised.  Finally, even if

the Pall had offered the full amount owed under the NYLL and the FLSA in addition to the

severance package, the severance agreement would still violate *Cheeks,* because it contains a

confidentiality provision and an overbroad general release.

## VI.    PALL DRAFTED THE AGREEMENT TO PERMIT THE PLAINTIFF TO PURSUE WAGE CLAIMS TO THE EXTENT THAT THE WAIVER WAS UNENFORCEABLE

The waiver drafted by Pall tellingly contains a limitation.  The waiver is only "to the []

extent permitted by law."  *See* Severance Agreement, Section 2. Section 10 of the severance

agreement also contains a severability provision, as follows:

> In the event that one or more of the provisions contained in this Agreement or the Covenants Agreement shall for any reason be held unenforceable in any respect under the law of any state of the United States or the United States, such unenforceability shall not affect any other provision of this Agreement or the Covenants Agreement, but this Agreement and the Covenants Agreement shall then be construed as if such unenforceable provision or provisions had never been contained herein or therein.

If the release and waiver of NYLL and FLSA claims is found to be overbroad, then Pall wanted

the agreement to be construed as if the Plaintiff had never released these claims.

### CONCLUSION

For the reasons stated herein, the provisions of the severance agreement releasing wage

claims under the NYLL and the FLSA are invalid, and the Defendant's motion should be denied.

Dated:  Glen Cove, New York
         August 14, 2019

Respectfully submitted,

*Steven J. Moser*

Steven J. Moser

19