UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
BARBARA J. TORTOMAS,

                           Plaintiff,

           -against-

PALL CORPORATION,

                          Defendant.
----------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM AND ORDER**
18-CV-5098 (JMA)(SIL)

**APPEARANCES:**

Steven John Moser
Moser Law Firm PC
5 East Main Street
Huntington, NY 11743
    *Attorney for Plaintiff Barbara J. Tortomas*

Gina Renee Merrill
Anshel Joel Kaplan
Seyfarth Shaw LLP
620 Eighth Avenue
New York, NY 10018
    *Attorneys for Defendant Pall Corporation*

**AZRACK, United States District Judge:**

      Plaintiff Barbara J. Tortomas ("Plaintiff") brought this action against defendant Pall Corporation ("Defendant") to recover unpaid overtime under the Fair Labor Standards Act ("FLSA") and unpaid overtime and straight wages under the New York Labor Law ("NYLL"). (ECF No. 1, the "Complaint.")  Defendant has moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (ECF No. 13.)  For the reasons set forth below, the Court GRANTS in part and DENIES in part Defendant's motion.

1

## I.  BACKGROUND

Plaintiff worked for Defendant for approximately thirty-two years, most recently as an "IT Administrator" for which she earned a salary of $77,200 per year.  (ECF No. 14-4 at 3.)  On June 27, 2017, Plaintiff was notified that her position was being eliminated and that her last day of work would be three days later.  (Declaration of Barbara J. Tortomas, "Tortomas Decl.," ECF No. 14-1 at 1.)  At the time of her termination, Plaintiff signed an agreement under which she was to receive one week's worth of pay for each year she worked for Defendant.  (Id.)

On July 31, 2017, Plaintiff's attorney sent a letter to members of Defendant's Human Resources Department seeking to revoke the agreement Plaintiff signed.  (ECF No. 14-3.)  He stated that the agreement did "not provide for a seven day revocation period" and contained "a waiver of FLSA rights, which has been found unenforceable."  (Id.)  The next day, Defendant's Human Resources Manager accepted the revocation and canceled the severance payment.  (Declaration of Steven John Moser, "Moser Decl.," ECF No. 14-2 at 2.)

On September 22, 2017, Plaintiff's attorney sent another letter to Defendant's Human Resources Manager.  (ECF No. 14-4.)  The letter demanded $212,840.00 to resolve claims Plaintiff said she could bring under the Age Discrimination in Employment Act of 1967, the New York State Human Rights Law, the FLSA, and the NYLL.  (Id.)  Other than confirming receipt, Defendant never responded to Plaintiff's counsel's letter.  (Moser Decl. at 2.)

On November 2, 2017, Plaintiff, while still represented by counsel, notified Defendant's Human Resources Manager that she "would like to accept my severance."  (Tortomas Decl. at 2.)  Six days later, Plaintiff executed another severance agreement that, she claims, "was almost identical to the first."  (Id.)  The Separation and Release Agreement (the "Separation Agreement") Plaintiff signed provided she:

>unconditionally and irrevocably releases, waives, discharges, and gives up, to the full extent permitted by law, any and all Claims (as defined below) that [Plaintiff] may have against [Defendant], arising on or prior to the date of [Plaintiff]'s execution and delivery of this Agreement to [Defendant]. 'Claims' means any and all actions, charges, controversies, demands, causes of action, suits, rights, and/or claims whatsoever for debts, sums of money, wages, salary, severance pay, . . . losses, penalties, damages, . . . arising, directly or indirectly, out of any promise, agreement, offer letter, contract, understanding, common law, tort, the laws, statutes, and/or regulations of the State of New York or any other state and the United States, including, but not limited to, federal and state wage and hour laws (to the extent waivable), . . . and the New York Labor Law, . . . whether arising directly or indirectly from any act or omission, whether intentional or unintentional . . . [Plaintiff] specifically releases any and all Claims arising out of the termination of [Plaintiff's] employment with [Defendant]. [Plaintiff] expressly acknowledges and agrees that, by entering into this Agreement, [Plaintiff] is releasing and waiving any and all Claims, including, without limitation, Claims that [Plaintiff] may have on or before the date of [Plaintiff's] execution and delivery of this Agreement to [Defendant].

(ECF No. 13-3 at 1–2.) Under the Separation Agreement, Defendant paid Plaintiff $47,511.04, an amount equivalent to thirty-two weeks of her base salary. (Id. at 2.)

Represented by the same counsel who sent the demand letters and represented her when she executed the Separation Agreement, Plaintiff initiated the instant litigation on September 10, 2018. Plaintiff brings claims under the FLSA for unpaid overtime and the NYLL for unpaid overtime and straight wages. (ECF No. 1.) On July 26, 2019, Defendant moved to dismiss the Complaint for failure to state a claim upon which relief can be granted. (ECF No. 13.)

## II.  DISCUSSION

### A. Standard for Review

To survive a motion to dismiss brought under Rule 12(b)(6), a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550

3

U.S. at 556). Mere labels and legal conclusions will not suffice. Twombly, 550 U.S. at 555. In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). The Court can consider "documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, such as the [Separation] Agreement, and relied upon, in bringing the suit." Young Min Lee v. New Kang Suh, Inc., 17-CV-9502, 2019 WL 689085, at *1 (S.D.N.Y. Feb. 15, 2019) (citing Kleinman v. Elan Corp., 706 F.3d 145, 152 (2d Cir. 2013)).

**B. Law Governing Releases**

Defendant argues that the release in the Separation Agreement bars the claims Plaintiff brings in this lawsuit. New York law treats releases as contracts, and courts considering contested releases will analyze them according to principles of contract law. Thus, a release will ordinarily be enforced if it is clear and unambiguous on its face, knowingly and voluntarily entered, and not the result of fraud, duress, or undue influence. Hummel v. AstraZeneca LP, 575 F. Supp. 2d 568, 570 (S.D.N.Y. 2008) (citing Skluth v. United Merch. & Mfr., Inc., 559 N.Y.S.2d 280, 282 (N.Y. App. Div. 1990)). To set aside a release, a party must demonstrate that the release does not apply to the claim at issue, or that there is an equitable basis to vitiate its effect. Id.

When analyzing a contract, "[e]vidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing." W.W.W. Assocs., Inc. v. Giancontieri, 77 N.Y.2d 157, 162 (1990). Neither party claims that the language in the release is ambiguous, and the Court finds that the release unambiguously releases Plaintiff's FLSA and NYLL claims. Consequently, Plaintiff's various arguments

4

regarding the parties' purported mutual understanding based on Defendant's failure to respond to her counsel's analysis of the release's enforceability in his letter, her description of Defendant's sophistication, or the blog post on Defendant's counsel's law firm's website are meritless, and the Court will analyze the text as it was written. (ECF No. 14 at 19–20.)

**C. Plaintiff's NYLL Claims**

Plaintiff brings causes of action under the NYLL for overtime and straight wages violations and maintains that the NYLL does not permit those claims to be released. (ECF No. 1 at 4–5.) Defendant argues that Plaintiff expressly released these claims in the Separation Agreement, which provided Plaintiff "unconditionally and irrevocably release[d] . . . any and all Claims," including claims under "state wage and hour laws" and "the New York Labor Law." (ECF No. 13-3 at 1–2.) The Court agrees.

Courts permit plaintiffs to release NYLL claims ex-post. See, e.g., Hummel, 575 F. Supp. 2d at 570 ("Courts have repeatedly upheld the validity of broadly-worded releases with respect to claims brought pursuant to New York employment statutes."); Difilippo v. Barclays Capital, Inc., 552 F. Supp. 2d 417, 426 (S.D.N.Y. 2008) (Plaintiff "executed a general release and waiver, waiving his right to seek relief under the New York Labor Law in exchange for a severance payment and is barred from raising this claim."); Simel v. JP Morgan Chase, 05-CV-9750, 2007 WL 809689, at *3 (S.D.N.Y. Mar. 19, 2007) ("All of the plaintiff's state law wage claims against the defendant reference the period of his employment before his departure. They are squarely within the scope of the Agreement and are considered settled thereunder.") The ex-post release of Plaintiff's NYLL claims is permissible here.

Plaintiff's ex-post Separation Agreement clearly and unambiguously released her NYLL claims. She has not alleged that she was induced by fraud, duress, or undue influence to execute

5

it. Plaintiff entered the agreement knowingly and voluntarily, was represented by counsel, and received $47,511.04 in consideration. She had several months to review the terms and did so on two occasions, signing the original in June 2017 and then signing the "almost identical" operative Separation Agreement in November 2017. (Tortomas Decl. at 2.) Plaintiff also could have sought to revoke the Separation Agreement, as she previously did with the first agreement. The release is therefore a valid contract. For the Court to set it aside, Plaintiff must demonstrate that it does not apply to her NYLL claims, or that there is an equitable basis to vitiate its effect. She has failed to do so.

Plaintiff argues that this Court should not follow the lead of numerous district courts in this circuit that have upheld releases of NYLL claims. (ECF No. 14 at 13.) The Court finds no basis to do so.

First, Plaintiff argues that Am. Broad. Companies, Inc. v. Roberts, 61 N.Y.2d 244 (1984), binds this Court and invalidates Plaintiff's release of her NYLL claims. There, the New York Court of Appeals upheld an ex-ante waiver negotiated as part of a collective bargaining agreement. That situation is not currently before the Court, and Plaintiff identifies no authority that bars the ex-post waiver that occurred here. Plaintiff's reasoning would lead to the absurd result that any settlement agreement that waived NYLL claims ex-post would be invalid.

Plaintiff also contends that NYLL §§ 191 and 663 prohibited her from releasing her NYLL claims.[1] (ECF No. 14 at 14.) This argument is meritless. As Defendant points out, these statutory prohibitions apply when an employee agrees ex-ante to work for less compensation than they would be entitled to by statute. Such ex-ante agreements are distinct from ex-post agreements to

---

[1] NYLL § 191 states that "[n]o employee shall be required as a condition of employment to accept wages at periods other than as provided in this section." NYLL § 663 provides that "[a]ny agreement between the employee, and the employer to work for less than such wage shall be no defense to such action."

6

settle claims arising from work an employee has already performed. Under New York law, "there is no express restriction on the private settlement or waiver of wage and hour claims." Wright v. Brae Brun Country Club, Inc., 08-CV-3172, 2009 WL 725012, at *4 (S.D.N.Y. Mar. 20, 2009).

Further, contrary to Plaintiff's claim, the release does not contravene "the legislative purpose" of the NYLL. See Am. Broad., 61 N.Y.2d at 249. Tellingly, Plaintiff cannot cite to a single case that found an ex-post settlement of NYLL claims violated the purpose of the NYLL. Plaintiff's argument is particularly absurd in light of the fact that she was a well-compensated employee who released her NYLL claims in exchange for a substantial payment.

Plaintiff's remaining arguments concerning the NYLL are similarly meritless. For example, whatever additional protections the FLSA might provide to employees who enter into settlements releasing FLSA claims—an issue addressed in the next section—those protections simply do not apply to the NYLL. See Simel, 2007 WL 809689, at *4. Accordingly, Plaintiff's NYLL claims are dismissed because she released them in the Separation Agreement.

**D. Plaintiff's FLSA Claim**

The Court cannot determine, on a motion to dismiss, if the Separation Agreement's release of Plaintiff's FLSA claim for unpaid overtime is enforceable.

The Separation Agreement stated Plaintiff released any claims under "the laws, statutes, and/or regulations of . . . the United States, including, but not limited to, federal . . . wage and hour laws (to the extent waivable)." (ECF No. 13-3 at 1–2.) Nonetheless, Plaintiff argues that the release is invalid because, according to Plaintiff, releases of FLSA claims are per se unenforceable unless they were approved by a district court or the Department of the Labor. (ECF No. 14 at 9.) As Defendant notes, however, the authority on which Plaintiff relies does not directly address the

7

situation at issue here: "a pre-litigation release, supported by substantial consideration, executed by a represented plaintiff who knowingly released her FLSA rights." (ECF No. 15 at 13.)

The Second Circuit has not held that such extra-judicial releases are per se unenforceable. Even after the Second Circuit's decision in Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015), a number of courts have enforced releases of FLSA claims in private settlement agreements entered into prior to litigation. See Young Min, 2019 WL 689085, at *2; Gaughan v. Rubenstein, 261 F. Supp. 3d 390, 401 (S.D.N.Y. 2017); Matamoro v. Khomari, No. 16-CV-9004, 2017 WL 6542954, at *2 (S.D.N.Y. Dec. 19, 2017). These decisions and others from outside the Second Circuit indicate that a private FLSA settlement can, in certain circumstances, be enforceable. See Martin v. Spring Break '83 Prods., LLC, 688 F.3d 247 (5th Cir. 2012); Martinez v. Bohls Bearing Equip. Co., 361 F.Supp.2d 608 (W.D. Tex. 2005). The Court agrees that "settlement agreements for FLSA-related claims entered into prior to litigation should be analyzed on a case-by-case basis."[2] Young Min, 2019 WL 689085, at *2.

Here, Plaintiff—a well-compensated employee—was represented by able counsel, had ample time to consider Defendant's offer, and received substantial consideration in exchange for her release. However, on the question of whether there was a bona fide dispute about liability here, the record is limited to a single conclusory sentence in Defendant's reply brief, which asserts that a bona fide dispute exists about Plaintiff's entitlement to overtime under the FLSA. Given Defendant's assertion on that point, this case is, at the very least, distinguishable from the Supreme

---

[2] It is notable that although Plaintiff initially asserts that "extra-judicial waivers of FLSA rights are unenforceable," Plaintiff goes on, later in her brief, to argue that "[p]arties should have at least some capacity to resolve claims out of Court," and suggests certain factors that Plaintiff believes courts should consider. (ECF No. 14 at 3, 22.) In this section of her brief, Plaintiff also suggests that one problem with Plaintiff's release of her FLSA claims is that her severance agreement contained a confidentiality clause. While this Court cannot, of course, amend the parties' agreement, if the presence of a confidentiality provision were a potential obstacle to enforcement of the FLSA release, nothing would prevent Defendant from simply informing this Court that it will not enforce that provision against Plaintiff—a judicial admission which would bar Defendant from doing so going forward.

8

Court's decision in D.A. Schulte, Inc. v. Gangi, 328 U.S. 108 (1946), which refused to enforce a release concerning liquidated damages where it was conceded that there were no disputes over the hours the employees worked or whether the employees where entitled to overtime.  Nevertheless, the Court finds that Defendant's conclusory assertion that a bona fide dispute exists is, along with the other facts before the Court, insufficient to show, on a motion to dismiss, that the FLSA release signed by Plaintiff is enforceable.  In cases where pre-litigation FLSA releases are enforced, there is often at least some evidence of a bona fide dispute over the number of hours worked and/or the employee's entitlement to overtime.

Evidence that will justify enforcement of a pre-litigation FLSA release can come in various forms.  See Gaughan, 261 F. Supp. 3d at 402 & n.3 (enforcing pre-litigation release where, inter alia, Plaintiff was aware of her FLSA rights, was represented by counsel, and received significant consideration after negotiation in exchange for releasing her claims); Martin, 688 F.3d at 247 (enforcing pre-litigation FLSA settlement and finding a "bona fide dispute between [the Plaintiffs and their employer] over the number of hours for which they are owed their set rate of pay" based on, inter alia, deposition of a union representative who "explained that other [employees] disputed that Appellants had worked the hours they claimed to have worked"); Martinez, 361 F.Supp.2d at 632 (enforcing pre-litigation release of FLSA claims by unrepresented employee—who made $8.13 per hour and accepted $1,000 settlement for potential $3,500 claim—because the evidence introduced by the defendant in litigation, including time cards and an analysis of how many hours the plaintiff worked each week, established that "a bona fide dispute as to liability existed").

Here, Defendant may be able to produce evidence, at summary judgment, that would justify enforcement of Plaintiff's FLSA release by, for example, showing that there is a bona fide dispute over Plaintiff's entitlement to overtime and/or the number of hours she worked.  Accordingly, after

the parties engage in discovery, the Court will entertain a request by Defendant to move for summary judgment on the discrete issue of whether the evidence justifies enforcement of the FLSA release.  It must be stressed that the question of whether Plaintiff's FLSA release is enforceable is a different question than the merits of Plaintiff's underlying FLSA claims, and discovery on the former question may be more limited than the typical discovery that occurs when the merits of a plaintiff's wage-and-hour claims are being litigated.

### III.  CONCLUSION

For the reasons set forth above, the Court GRANTS in part and DENIES in part Defendant's motion.

**SO ORDERED.**

Dated:   May 31, 2020
         Central Islip, New York

                                          /s/ (JMA)
                                        JOAN M. AZRACK
                                        UNITED STATES DISTRICT JUDGE