# **Exhibit A**

> This Agreement must be executed and delivered to Employer (Attn: Erin Schettini)
> on or before **July 22, 2017**
> **REVISED to be returned by November 27, 2017**

## SEPARATION AND GENERAL RELEASE AGREEMENT

This Separation and General Release Agreement (the "Agreement") is entered into between Barbara Tortomas with an address at 1 Redwood Path Glen Cove, NY 11542 ("Employee") and PALL CORPORATION, a New York corporation with its principal offices at 25 Harbor Park Drive, Port Washington, New York 11050 ("Employer"). Employer, together with its past, present and future parent entities, subsidiaries, affiliated entities, related companies and divisions and each of the respective past, present and future officers, directors, employees, shareholders, members, partners, trustees, employee benefit plans (and such plans' fiduciaries, agents, administrators and insurers), attorneys, and agents (individually and in their official capacities), as well as any predecessors, future successors or assigns or estates of any of the foregoing, is collectively referred to in this Agreement as the "Released Parties".

1. **Separation of Employment.** Employee acknowledges and understands that Employee's last day of employment with Employer was June 30, 2017 (the "Separation Date"). Employee further acknowledges and agrees that, except as otherwise provided in this Agreement, Employee has received all compensation and benefits to which Employee is entitled as a result of Employee's employment with Employer. Employee understands that, except as otherwise provided in this Agreement, Employee is entitled to nothing further from any of the Released Parties, including reinstatement by Employer.

2. **Employee General Release of Released Parties.** In consideration of the Severance Amount set forth in Section 4 below, Employee hereby unconditionally and irrevocably releases, waives, discharges, and gives up, to the full extent permitted by law, any and all Claims (as defined below) that Employee may have against any of the Released Parties, arising on or prior to the date of Employee's execution and delivery of this Agreement to Employer. "Claims" means any and all actions, charges, controversies, demands, causes of action, suits, rights, and/or claims whatsoever for debts, sums of money, wages, salary, severance pay, commissions, bonuses, unvested stock options and restricted stock units, unvested retirement benefits, paid time off, vacation pay, sick pay, fees and costs, attorneys' fees, losses, penalties, damages, including damages for pain and suffering and emotional harm, arising, directly or indirectly, out of any promise, agreement, offer letter, contract, understanding, common law, tort, the laws, statutes, and/or regulations of the State of New York or any other state and the United States, including, but not limited to, federal and state wage and hour laws (to the extent waivable), federal and state whistleblower laws, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, Section 1981 through 1988 of Title 42 of the United States Code, The Employee Retirement Income Security Act of 1974 ("ERISA"), The Immigration Reform and Control Act, The Worker Adjustment and Retraining Notification Act, The Genetic Information Nondiscrimination Act of 2008, the Equal Pay Act, the Lilly Ledbetter Fair Pay Act, the Americans with Disabilities Act, the Family and Medical Leave Act, the Employee Retirement Income Security Act (excluding "COBRA"), the Vietnam Era Veterans Readjustment Assistance Act, the Fair Credit Reporting Act, Uniformed Services Employment and Reemployment Rights Act (USERRAthe Occupational Safety and Health Act, the Sarbanes-Oxley Act of 2002, the New York State Human Rights Law, the New York City Human Rights Law, and the New York

Labor Law, as each may be amended from time to time, whether arising directly or indirectly from any act or omission, whether intentional or unintentional. Except as otherwise permitted herein (specifically Section 11(B) below), this Section 2 releases all Claims including those of which Employee is not aware and those not mentioned in this Agreement. Employee specifically releases any and all Claims arising out of the termination of Employee's employment with the Employer. Employee expressly acknowledges and agrees that, by entering into this Agreement, Employee is releasing and waiving any and all Claims, including, without limitation, Claims that Employee may have on or before the date of Employee's execution and delivery of this Agreement to Employer.

3. <u>Representations; Covenant Not to Sue.</u> Employee hereby represents and warrants to the Released Parties that Employee has not: (A) except as otherwise permitted herein (specifically Section 11(B) below), filed, caused or permitted to be filed any pending proceeding against any of the Released Parties, nor has Employee agreed to do any of the foregoing; (B) assigned, transferred, sold, encumbered, pledged, hypothecated, mortgaged, distributed, or otherwise disposed of or conveyed to any third party any right or Claim against any of the Released Parties that has been released in this Agreement; or (C) directly or indirectly assisted any third party in filing, causing or assisting to be filed, any Claim against any of the Released Parties. Employee further affirms that Employee has been provided and/or has not been denied any leave requested under the federal Family and Medical Leave Act. Except as permitted in Section 11 below, Employee covenants and agrees that Employee shall not encourage or solicit or voluntarily assist or participate in any way in the filing, reporting or prosecution by himself or any third party of a proceeding or Claim against any of the Released Parties.

4. <u>Severance</u>. As good consideration for Employee's execution, delivery and non-revocation of this Agreement, Employer shall:

(a) pay to Employee $47,511.04, representing an amount equivalent to 32 weeks of Employee's base salary (at the rate in effect immediately prior to the Separation Date), less applicable withholdings and other customary payroll deductions, excluding 401(k) contributions which Employee will not be eligible to make (the "<u>Severance Amount</u>"). The Severance Amount shall be payable to Employee in a lump sum on the next regular pay date following the 8th day after Employee's execution and delivery of this Agreement to Employer (or as soon after such next regular pay date as is administratively practical.

Employee acknowledges that Employee is not otherwise entitled to receive the Severance Amount and acknowledges that nothing in this Agreement shall be deemed to be an admission of liability on the part of any of the Released Parties. Employee agrees that Employee will not seek anything further from any of the Released Parties, nor is he entitled to anything further under any policy, plan or practice.

5. <u>Who is Bound</u>. Employer and Employee are bound by this Agreement. Anyone who succeeds to Employee's rights and responsibilities, such as the executors of Employee's estate, is bound, and anyone who succeeds to Employer's rights and responsibilities, such as its successors and assigns, is also bound.

6.  <u>Cooperation with Investigations/Litigation.</u> Employee agrees, upon Employer's request, to reasonably cooperate in any Employer investigation, litigation, arbitration, or regulatory proceeding regarding events that occurred during Employee's tenure with Employer. Employee will make himself or herself reasonably available to consult with Employer's counsel, to provide information, and to appear to give testimony. Employer will reimburse Employee for reasonable out-of-pocket expenses Employee incurs in extending such cooperation, so long as Employee provides advance written notice of Employee's request for reimbursement and provides satisfactory documentation of the expenses.

7.  <u>Non Disparagement and Confidentiality.</u> Employee agrees not to make any defamatory or maliciously derogatory statements concerning any of the Released Parties. Provided inquiries are directed to **Erin Schettini, HR Manager.** Employer shall disclose to prospective employers information limited to Employee's dates of employment and last position held by Employee. Employee confirms and agrees that Employee shall not, directly or indirectly, disclose to any person or entity or use for Employee's own benefit, any confidential information concerning the business, projects, finances or operations of Employer, its affiliates or subsidiaries or any of their respective customers; provided, however, that Employee's obligations under this Section 7 shall not apply to information generally known in Employer's industry through no fault of Employee or the disclosure of which is required by law after reasonable notice has been provided to Employer sufficient to enable Employer to contest the disclosure. Confidential information shall include, without limitation, all trade secrets, know-how, show-how, technical, operating, financial, and other business information and materials, whether or not reduced to writing or other medium and whether or not marked or labeled confidential, proprietary or the like, including, but not limited to, information regarding source codes, software programs, computer systems, logos, designs, formulae, sales, marketing and pricing techniques, procedures, inventions, products, improvements, methodology, processes, concepts, records, files, memoranda, reports, plans, proposals, price lists, customer and supplier lists, and customer and supplier information. Employee shall not reveal the amounts paid to Employee or the other terms of this Agreement to anyone, except to any federal, state or local governmental agency or to Employee's immediate family, legal and financial advisors (and then only after securing the agreement of such individual to maintain the confidentiality of this Agreement), or in response to a subpoena or other legal process, after reasonable notice has been provided to Employer sufficient to enable Employer to contest the disclosure. Under the federal Defend Trade Secrets Act of 2016, Employee shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (a) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made to Employee's attorney in relation to a lawsuit for retaliation against Employee for reporting a suspected violation of law; or (c) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. Without limiting the foregoing, Employee acknowledges that he/she continues to be bound by the terms of the Confidentiality, Non-Disclosure, Non-Solicitation, Non-Compete and/or Intellectual Property agreement, if any (attached hereto) (the "Covenants Agreement").

8.  <u>Employer Property.</u> Employee represents that he or she has returned all Employer property in Employee's possession, custody or control, including, but not limited to, all Employer equipment, samples, laptop computers, personal digital assistants, cell phones, pass codes, keys, swipe cards, documents or other materials that Employee received, prepared, or

helped prepare. Employee represents that Employee has not retained any copies, duplicates, reproductions, computer disks, or excerpts thereof of Employer's documents.

9. <u>Remedies</u>. If Employee tells anyone the amount paid to Employee or any other term of this Agreement (except as otherwise permitted herein), breaches any other term or condition of this Agreement or the Covenants Agreement, or any representation made by Employee in this Agreement was false when made, it shall constitute a material breach of this Agreement and, in addition to and not instead of the Released Parties' other remedies hereunder, under the Covenants Agreement or otherwise at law or in equity, Employee shall be required to immediately, upon written notice from Employer, return the Severance Amount paid by Employer hereunder, less the <u>greater</u> <u>of</u>: (A) $500; or (B) 10% of such Severance Amount. Employee agrees that if Employee is required to return the Severance Amount, this Agreement shall continue to be binding on Employee and the Released Parties shall be entitled to enforce the provisions of this Agreement and the Covenants Agreement as if the Severance Amount had not been repaid to Employer and Employer shall have no further payment obligations to Employee hereunder. Further, in the event of a breach of this Agreement, Employee agrees to pay all of the Released Parties' attorneys' fees and other costs associated with enforcing this Agreement

10. <u>Construction of Agreement</u>. In the event that one or more of the provisions contained in this Agreement or the Covenants Agreement shall for any reason be held unenforceable in any respect under the law of any state of the United States or the United States, such unenforceability shall not affect any other provision of this Agreement or the Covenants Agreement, but this Agreement and the Covenants Agreement shall then be construed as if such unenforceable provision or provisions had never been contained herein or therein. If it is ever held that any restriction hereunder or under the Covenants Agreement is too broad to permit enforcement of such restriction to its fullest extent, such restriction shall be enforced to the maximum extent permitted by applicable law. This Agreement, the Covenants Agreement and any and all matters arising directly or indirectly herefrom or therefrom shall be governed under the laws of the State of New York, without reference to choice of law rules. Employer and Employee consent to the sole jurisdiction of the federal and state courts of New York. **EMPLOYER AND EMPLOYEE HEREBY WAIVE THEIR RESPECTIVE RIGHT TO TRIAL BY JURY IN ANY ACTION CONCERNING THIS AGREEMENT OR ANY AND ALL MATTERS ARISING DIRECTLY OR INDIRECTLY HEREFROM AND REPRESENT THAT THEY HAVE CONSULTED WITH COUNSEL OF THEIR CHOICE OR HAVE CHOSEN VOLUNTARILY NOT TO DO SO SPECIFICALLY WITH RESPECT TO THIS WAIVER.**

11. <u>Acknowledgments</u>. Employer and Employee acknowledge and agree that:

(A) By entering in this Agreement, Employee does not waive any rights or Claims that may arise after the date that Employee executes and delivers this Agreement to Employer;

(B) This Agreement shall not affect the rights and responsibilities of the Equal Employment Opportunity Commission (the "<u>EEOC</u>") or similar federal or state agency (e.g. NLRB, SEC., etc.) to enforce ADEA or other applicable laws, and further acknowledge and agree that this Agreement shall not be used to justify interfering with Employee's protected right to file a charge or participate in an investigation or proceeding conducted by the EEOC or similar federal or state agency. Accordingly, nothing in this Agreement shall preclude Employee from

filing a charge with, or participating in any manner in an investigation, hearing or proceeding conducted by, the EEOC or other similar federal or state agency, but to the maximum extent permitted by law, Employee affirms he or she shall not be entitled to recover any individual monetary relief or other individual remedies if such an administrative claim is made; [and]

(C)  Nothing in this Agreement shall preclude Employee from exercising Employee's rights, if any (i) under Section 601-608 of the Employee Retirement Income Security Act of 1974, as amended, popularly known as COBRA, or (ii) Employer's 401(k) or pension plans.

12. Opportunity for Review.

(A)  **Employee is hereby advised and encouraged by Employer to consult with his/her own independent counsel before signing this Agreement.** Employee represents and warrants that Employee: (i) has had sufficient opportunity to consider this Agreement; (ii) has read this Agreement; (iii) understands all the terms and conditions hereof; (iv) is not incompetent or had a guardian, conservator or trustee appointed for Employee; (v) has entered into this Agreement of Employee's own free will and volition; (vi) has duly executed and delivered this Agreement; (vii) understands that Employee is responsible for Employee's own attorney's fees and costs; (viii) has had the opportunity to review this Agreement with counsel of Employee's choice or has chosen voluntarily not to do so; (ix) understands the Employee has been given twenty-one (21) days to review this Agreement before signing this Agreement and understands that he or she is free to use as much or as little of the 21 day period as he or she wishes or considers necessary before deciding to sign this Agreement; (x) understands that if Employee does not sign and return this Agreement to Employer (Attn: **Erin Schettini, HR Manager** on or before November 27, 2017, Employer shall have no obligation to enter into this Agreement, Employee shall not be entitled to the Severance Amount set forth in Section 4 of this Agreement, and the Separation Date shall be unaltered; and (xi) understands that this Agreement is valid, binding and enforceable against the parties to this Agreement in accordance with its terms.

Agreed to and accepted by, on this 8th day of Nov, 2017.

EMPLOYEE:
Barbara Sortomas

Agreed to and accepted by, on this 9th day of NOV, 2017.

PALL CORPORATION

Erin Schettini