# **Exhibit 1**

## SETTLEMENT AGREEMENT AND RELEASE

**THIS SETTLEMENT AGREEMENT AND RELEASE** (the "Agreement") is made and entered into by and between Barbara J. Tortomas ("Tortomas") and Pall Corporation ("Pall") (each a "Party" and collectively the "Parties").

**WHEREAS**, Tortomas is a former employee of Pall, whose employment with Pall terminated on June 30, 2017;

**WHEREAS**, the Parties entered into a separation and general release agreement in November 2017 attached hereto as Exhibit A ("Separation Agreement") which included the following provisions, among others: (i) Pall agreed to pay Tortomas the amount of $47,511.04 ("Severance Payment"), (ii) Tortomas agreed to a release of claims and a covenant not to sue Pall consistent with the release, and (iii) Tortomas agreed that if she breached the agreement, she would be required to return 90 percent of the Severance Payment and pay Pall's attorneys' fees and costs associated with enforcing the Separation Agreement;

**WHEREAS**, Pall made the Severance Payment to Tortomas;

**WHEREAS**, Tortomas filed a Complaint in the United States District Court for the Eastern District of New York on September 10, 2018, captioned *Barbara J. Tortomas v. Pall Corporation*, Case Number 2:18-CV-05098 ("Lawsuit"), alleging claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") for the recovery of unpaid overtime and straight time wages;

**WHEREAS**, in July 2019, Pall moved to dismiss the Complaint based on the Separation Agreement and, in May 2020, the Court dismissed with prejudice the NYLL claims;

**WHEREAS**, in June 2020, Pall demanded in writing that Tortomas return to Pall $42,759.93 (90 percent of the Severance Payment), and pay to Pall its attorneys' fees and other costs associated with enforcing the Separation Agreement with respect to the NYLL claims, which at that time amounted to approximately $16,752.50, and continued to accrue ("Demand Letter");

**WHEREAS**, Tortomas failed to remit payment as demanded, and Pall filed a Counterclaim on August 19, 2020 ("Counterclaim") consistent with the Demand Letter;

**WHEREAS**, Pall and Tortomas each dispute and deny the allegations contained in the Lawsuit and Counterclaim respectively, and each deny that they engaged in any wrongdoing or unlawful activity whatsoever;

*Each party shall initial each page as indicated*

Tortomas / Pall

**WHEREAS**, by this Agreement, the Parties desire to settle, fully and finally, all claims and causes of action relating to the Lawsuit and/or Counterclaim;

**NOW, THEREFORE**, in consideration of the terms, conditions, and promises set forth in this Agreement, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. **Consideration**. In exchange for Tortomas' promises in the Agreement, including a release and a dismissal with prejudice of her claims in the Lawsuit, Pall will dismiss with prejudice its cause of action in the Counterclaim. In exchange for Pall's promises in the Agreement, including a dismissal with prejudice of its cause of action in the Counterclaim, Tortomas will dismiss with prejudice her claims in the Lawsuit. The Parties agree that each party is responsible for its own attorneys' fees and costs in connection with the Lawsuit, the Counterclaim and this Agreement.

2. **Mutual Release**.

    a. **Release by Tortomas.** In exchange for the Consideration provided for in this Agreement, which Tortomas would not be entitled to receive apart from this Agreement, Tortomas does hereby, on behalf of herself and her heirs, representatives, attorneys, executors, administrators, successors, and assigns, unconditionally release and forever discharge Pall, and its affiliates, parents, subsidiaries, related companies, successors, predecessors, and assigns, and each of its and their respective officers, directors, partners, shareholders, employees, consultants, agents, representatives, and attorneys, past and present, (collectively referenced herein as "Releasees"), from:

    i. Any and all claims raised or which could have been raised in the Lawsuit;

    ii. Any and all claims arising under the FLSA or NYLL;

    iii. Any and all claims of unpaid or untimely paid wages or other forms of compensation, including but not limited to, claims asserted under any legal theory or statute for misclassification, failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, violation of the anti-retaliation provisions of the FLSA, NYLL or other state law with respect to claims that were or that could have been asserted in the Lawsuit, failure to pay final wages, failure to furnish accurate wage statements or other notices, failure to keep accurate records, and/or any claims for or relating to failure to pay gratuities, tips, tip allowances or service charges, to the fullest extent allowed by law.

*Each party shall initial each page as indicated.*

BA
Tortomas

EjV
Pall

b. Excluded from the Release above are any claims or rights which cannot be waived by law, including claims arising after the date Tortomas signs this Agreement, and any claims this Agreement cannot waive, such as for unemployment or worker compensation. Additionally, nothing in this Agreement limits Tortomas' right to file a claim, give information or participate in any investigation or proceeding with any government agency (such as the U.S. Equal Employment Opportunity Commission) under any law protecting such rights, all without giving notice to Pall. But Tortomas agrees to give up any money or other personal benefit from Pall (not a government agency) for any such claim or litigation, unless prohibited by law.

c. **Release by Pall.** In exchange for the Consideration provided for in this Agreement, Pall does hereby, on behalf of each Releasee, unconditionally release and forever discharge Tortomas from:

   i. Any and all claims raised or which could have been raised in the Counterclaim.

d. Excluded from the Release above are any claims or rights which cannot be waived by law, including claims arising after the date Pall signs this Agreement.

3. **Mutual Covenant Not to Sue.** A "covenant not to sue" is a legal term that means that Tortomas and Pall each promise not to file a lawsuit in court. It is different from the Release of claims contained in Section 2. Besides waiving and releasing the claims covered by Section 2, Tortomas further agrees never to sue the Releasees in any forum for any claims she released pursuant to the Release in Section 2. Besides waiving and releasing the claims covered by Section 2, Pall further agrees never to sue Tortomas in any forum for any claims it released pursuant to the Release in Section 2. Notwithstanding this Covenant Not to Sue, the Parties may bring a claim to enforce this Agreement. If either Party brings a lawsuit in violation of this Agreement, the breaching party shall be liable to the non-breaching party for its reasonable attorneys' fees and other litigation costs incurred in defending against such a suit.

4. **Mutual Dismissal of Lawsuit and Counterclaim with Prejudice**. The Parties agree and understand that a condition to this Agreement is the entry of an order by the United States District Court for the Eastern District of New York dismissing the Lawsuit and Counterclaim with prejudice and without any award of costs or attorneys' fees to either side and that the entry of such order is a material inducement to the Parties to enter into this Agreement. The Parties agree to direct their attorneys to execute a Stipulation of Dismissal with Prejudice in the form of Exhibit B without any award of costs or attorneys' fees to either side and to take all other steps necessary to obtain a Dismissal with Prejudice of the Lawsuit and Counterclaim.

---

*Each party shall initial each page as indicated*    

                                                          Tortomas    Pall

5. **Non-Admission.** The Parties recognize and agree that this Agreement does not constitute an admission by Tortomas, Pall or any of the Releasees of any violation of any common law or any federal, state, or local statute, regulation, or ordinance. Tortomas, Pall and the Releasees expressly deny any liability or wrongdoing whatsoever.

6. **Affirmations.** Tortomas hereby affirms that Pall owes Tortomas no compensation for her services or otherwise, including but not limited to salary, hourly straight time pay, overtime, wages, bonuses, incentive compensation, premium payments, shift differentials, expenses, reimbursements, benefits, vacation time and/or paid time.

7. **Other Claims and Representations.** Tortomas represents and warrants that she has not filed any lawsuits, claims, charges, grievances or disputes against Pall or any of the Releasees with any agency, court or other tribunal, and that she is not aware of any such lawsuits, claims, charges, grievances or disputes filed on her behalf. Tortomas agrees that in the event that any agency or court assumes jurisdiction of any lawsuit, claim, charge, grievance or complaint, or purports to bring any legal proceedings against the Releasees on Tortomas' behalf related to any claim released herein, Tortomas promptly will request that the agency or court withdraw from or dismiss the lawsuit, claim, charge, grievance or complaint with prejudice and that Tortomas shall take nothing in or from said action.

8. **Agreement Regarding Future Employment.** Tortomas waives any rights she may have to reinstatement and/or re-employment by Pall or any of its parents, subsidiaries, or affiliate companies and agrees never to seek or accept re-employment or future employment with Pall or any of its parents, subsidiaries, or affiliate companies. Tortomas agrees that should she apply for re-employment with Pall or any of its parents, subsidiaries, or affiliate companies, this Agreement is sufficient legal grounds for denying employment and/or termination of employment and Tortomas shall have no recourse against Pall or any of its parents, subsidiaries, or affiliate companies for refusing to offer to employ or to continue to employ her.

9. **Ownership of Claims.** Tortomas represents that she has not transferred or assigned, or purported to transfer or assign, to any person or entity, any claim described in this Agreement. Tortomas further agrees to indemnify and hold harmless Pall and all of the Releasees against any and all claims based upon, arising out of, or in any way connected with any such actual or purported transfer or assignment.

10. **Successors.** This Agreement shall be binding upon the Parties, and their heirs, representatives, executors, administrators, successors, insurers, and assigns, and shall inure to the benefit of each and all of the Releasees, and to their heirs, representatives, executors, administrators, successors, and assignees.

_Each party shall initial each page as indicated_

BA — Tortomas

EjV — Pall

**11. Entire Agreement.** This Agreement and the Separation Agreement set forth the entire agreement between the Parties as to the subject matter contained herein and fully supersedes any other prior agreements or understandings. Tortomas reaffirms the Separation Agreement and acknowledges that, in making her decision to sign this Agreement, she has not relied on any representations, promises, or agreements of any kind, except those set forth in this Agreement and the Separation Agreement. The language of all parts in this Agreement shall be construed as a whole, according to its fair meaning, and not strictly for or against either Party. Any uncertainty or ambiguity shall not be construed for or against any Party.

**12. Choice of Law.** This Agreement and any and all matters arising directly or indirectly herefrom shall be governed by the laws of the State of New York without regard to any conflict of law principle that would dictate the application of the laws of another jurisdiction. Pall and Tortomas consent to the sole jurisdiction of the federal and state courts of New York.

**13. Award of Attorneys' Fees to Non-Breaching Party.** The Parties further agree that should any court of competent jurisdiction find that any Party has breached any material term of this Agreement, the non-breaching Party shall be entitled to an award of attorneys' fees and costs incurred in establishing the breach and pursuing legal action, in an amount to be determined by such court. In the event that a Party brings a court action alleging a breach of this Agreement but does not establish that a material breach occurred, the Party alleged to have breached this Agreement shall be entitled to an award of attorneys' fees and costs incurred in defending the action, in an amount to be determined by the court.

**14. Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Furthermore, signatures delivered via facsimile or electronic mail shall have the same force, validity, and effect as the originals thereof.

[*Signature block on following page.*]

*Each party shall initial each page as indicated*

_____ Tortomas   _____ Pall

**IN WITNESS WHEREOF**, the Parties knowingly, voluntarily and without coercion execute this Agreement as their free act and deed:

Date: 10.28.20        *Barbara J. Tortomas*
                            **Barbara J. Tortomas**

Date: October 30, 2020    **Pall Corporation** */s/ Edward Velazquez*

                   By:   Edward J. Velazquez

                 Title:  Senior Corporate Counsel

*Each party shall initial each page as indicated*      BJ    EJV
                                                    Tortomas  Pa

# **Exhibit A**

> This Agreement must be executed and delivered to Employer (Attn: Erin Schettini)
> on or before **July 22, 2017**
> **REVISED to be returned by November 27, 2017**

## SEPARATION AND GENERAL RELEASE AGREEMENT

This Separation and General Release Agreement (the "Agreement") is entered into between Barbara Tortomas with an address at 1 Redwood Path Glen Cove, NY 11542 ("Employee") and PALL CORPORATION, a New York corporation with its principal offices at 25 Harbor Park Drive, Port Washington, New York 11050 ("Employer"). Employer, together with its past, present and future parent entities, subsidiaries, affiliated entities, related companies and divisions and each of the respective past, present and future officers, directors, employees, shareholders, members, partners, trustees, employee benefit plans (and such plans' fiduciaries, agents, administrators and insurers), attorneys, and agents (individually and in their official capacities), as well as any predecessors, future successors or assigns or estates of any of the foregoing, is collectively referred to in this Agreement as the "Released Parties".

1.  **Separation of Employment.** Employee acknowledges and understands that Employee's last day of employment with Employer was June 30, 2017 (the "Separation Date"). Employee further acknowledges and agrees that, except as otherwise provided in this Agreement, Employee has received all compensation and benefits to which Employee is entitled as a result of Employee's employment with Employer. Employee understands that, except as otherwise provided in this Agreement, Employee is entitled to nothing further from any of the Released Parties, including reinstatement by Employer.

2.  **Employee General Release of Released Parties.** In consideration of the Severance Amount set forth in Section 4 below, Employee hereby unconditionally and irrevocably releases, waives, discharges, and gives up, to the full extent permitted by law, any and all Claims (as defined below) that Employee may have against any of the Released Parties, arising on or prior to the date of Employee's execution and delivery of this Agreement to Employer. "Claims" means any and all actions, charges, controversies, demands, causes of action, suits, rights, and/or claims whatsoever for debts, sums of money, wages, salary, severance pay, commissions, bonuses, unvested stock options and restricted stock units, unvested retirement benefits, paid time off, vacation pay, sick pay, fees and costs, attorneys' fees, losses, penalties, damages, including damages for pain and suffering and emotional harm, arising, directly or indirectly, out of any promise, agreement, offer letter, contract, understanding, common law, tort, the laws, statutes, and/or regulations of the State of New York or any other state and the United States, including, but not limited to, federal and state wage and hour laws (to the extent waivable), federal and state whistleblower laws, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, Section 1981 through 1988 of Title 42 of the United States Code, The Employee Retirement Income Security Act of 1974 ("ERISA"), The Immigration Reform and Control Act, The Worker Adjustment and Retraining Notification Act, The Genetic Information Nondiscrimination Act of 2008, the Equal Pay Act, the Lilly Ledbetter Fair Pay Act, the Americans with Disabilities Act, the Family and Medical Leave Act, the Employee Retirement Income Security Act (excluding "COBRA"), the Vietnam Era Veterans Readjustment Assistance Act, the Fair Credit Reporting Act, Uniformed Services Employment and Reemployment Rights Act (USERRAthe Occupational Safety and Health Act, the Sarbanes-Oxley Act of 2002, the New York State Human Rights Law, the New York City Human Rights Law, and the New York

Labor Law, as each may be amended from time to time, whether arising directly or indirectly from any act or omission, whether intentional or unintentional. Except as otherwise permitted herein (specifically Section 11(B) below), this Section 2 releases all Claims including those of which Employee is not aware and those not mentioned in this Agreement. Employee specifically releases any and all Claims arising out of the termination of Employee's employment with the Employer. Employee expressly acknowledges and agrees that, by entering into this Agreement, Employee is releasing and waiving any and all Claims, including, without limitation, Claims that Employee may have on or before the date of Employee's execution and delivery of this Agreement to Employer.

3. <u>Representations; Covenant Not to Sue.</u> Employee hereby represents and warrants to the Released Parties that Employee has not: (A) except as otherwise permitted herein (specifically Section 11(B) below), filed, caused or permitted to be filed any pending proceeding against any of the Released Parties, nor has Employee agreed to do any of the foregoing; (B) assigned, transferred, sold, encumbered, pledged, hypothecated, mortgaged, distributed, or otherwise disposed of or conveyed to any third party any right or Claim against any of the Released Parties that has been released in this Agreement; or (C) directly or indirectly assisted any third party in filing, causing or assisting to be filed, any Claim against any of the Released Parties. Employee further affirms that Employee has been provided and/or has not been denied any leave requested under the federal Family and Medical Leave Act. Except as permitted in Section 11 below, Employee covenants and agrees that Employee shall not encourage or solicit or voluntarily assist or participate in any way in the filing, reporting or prosecution by himself or any third party of a proceeding or Claim against any of the Released Parties.

4. <u>Severance</u>. As good consideration for Employee's execution, delivery and non-revocation of this Agreement, Employer shall:

(a) pay to Employee $47,511.04, representing an amount equivalent to 32 weeks of Employee's base salary (at the rate in effect immediately prior to the Separation Date), less applicable withholdings and other customary payroll deductions, excluding 401(k) contributions which Employee will not be eligible to make (the "<u>Severance Amount</u>"). The Severance Amount shall be payable to Employee in a lump sum on the next regular pay date following the 8th day after Employee's execution and delivery of this Agreement to Employer (or as soon after such next regular pay date as is administratively practical.

Employee acknowledges that Employee is not otherwise entitled to receive the Severance Amount and acknowledges that nothing in this Agreement shall be deemed to be an admission of liability on the part of any of the Released Parties. Employee agrees that Employee will not seek anything further from any of the Released Parties, nor is he entitled to anything further under any policy, plan or practice.

5. <u>Who is Bound</u>. Employer and Employee are bound by this Agreement. Anyone who succeeds to Employee's rights and responsibilities, such as the executors of Employee's estate, is bound, and anyone who succeeds to Employer's rights and responsibilities, such as its successors and assigns, is also bound.

6.  <u>Cooperation with Investigations/Litigation.</u> Employee agrees, upon Employer's request, to reasonably cooperate in any Employer investigation, litigation, arbitration, or regulatory proceeding regarding events that occurred during Employee's tenure with Employer. Employee will make himself or herself reasonably available to consult with Employer's counsel, to provide information, and to appear to give testimony. Employer will reimburse Employee for reasonable out-of-pocket expenses Employee incurs in extending such cooperation, so long as Employee provides advance written notice of Employee's request for reimbursement and provides satisfactory documentation of the expenses.

7.  <u>Non Disparagement and Confidentiality</u>. Employee agrees not to make any defamatory or maliciously derogatory statements concerning any of the Released Parties. Provided inquiries are directed to **Erin Schettini, HR Manager.** Employer shall disclose to prospective employers information limited to Employee's dates of employment and last position held by Employee. Employee confirms and agrees that Employee shall not, directly or indirectly, disclose to any person or entity or use for Employee's own benefit, any confidential information concerning the business, projects, finances or operations of Employer, its affiliates or subsidiaries or any of their respective customers; provided, however, that Employee's obligations under this Section 7 shall not apply to information generally known in Employer's industry through no fault of Employee or the disclosure of which is required by law after reasonable notice has been provided to Employer sufficient to enable Employer to contest the disclosure. Confidential information shall include, without limitation, all trade secrets, know-how, show-how, technical, operating, financial, and other business information and materials, whether or not reduced to writing or other medium and whether or not marked or labeled confidential, proprietary or the like, including, but not limited to, information regarding source codes, software programs, computer systems, logos, designs, formulae, sales, marketing and pricing techniques, procedures, inventions, products, improvements, methodology, processes, concepts, records, files, memoranda, reports, plans, proposals, price lists, customer and supplier lists, and customer and supplier information. Employee shall not reveal the amounts paid to Employee or the other terms of this Agreement to anyone, except to any federal, state or local governmental agency or to Employee's immediate family, legal and financial advisors (and then only after securing the agreement of such individual to maintain the confidentiality of this Agreement), or in response to a subpoena or other legal process, after reasonable notice has been provided to Employer sufficient to enable Employer to contest the disclosure. Under the federal Defend Trade Secrets Act of 2016, Employee shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (a) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made to Employee's attorney in relation to a lawsuit for retaliation against Employee for reporting a suspected violation of law; or (c) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. Without limiting the foregoing, Employee acknowledges that he/she continues to be bound by the terms of the Confidentiality, Non-Disclosure, Non-Solicitation, Non-Compete and/or Intellectual Property agreement, if any (attached hereto) (the "Covenants Agreement").

8.  <u>Employer Property</u>. Employee represents that he or she has returned all Employer property in Employee's possession, custody or control, including, but not limited to, all Employer equipment, samples, laptop computers, personal digital assistants, cell phones, pass codes, keys, swipe cards, documents or other materials that Employee received, prepared, or

helped prepare. Employee represents that Employee has not retained any copies, duplicates, reproductions, computer disks, or excerpts thereof of Employer's documents.

9. Remedies. If Employee tells anyone the amount paid to Employee or any other term of this Agreement (except as otherwise permitted herein), breaches any other term or condition of this Agreement or the Covenants Agreement, or any representation made by Employee in this Agreement was false when made, it shall constitute a material breach of this Agreement and, in addition to and not instead of the Released Parties' other remedies hereunder, under the Covenants Agreement or otherwise at law or in equity, Employee shall be required to immediately, upon written notice from Employer, return the Severance Amount paid by Employer hereunder, less the greater of: (A) $500; or (B) 10% of such Severance Amount. Employee agrees that if Employee is required to return the Severance Amount, this Agreement shall continue to be binding on Employee and the Released Parties shall be entitled to enforce the provisions of this Agreement and the Covenants Agreement as if the Severance Amount had not been repaid to Employer and Employer shall have no further payment obligations to Employee hereunder. Further, in the event of a breach of this Agreement, Employee agrees to pay all of the Released Parties' attorneys' fees and other costs associated with enforcing this Agreement

10. Construction of Agreement. In the event that one or more of the provisions contained in this Agreement or the Covenants Agreement shall for any reason be held unenforceable in any respect under the law of any state of the United States or the United States, such unenforceability shall not affect any other provision of this Agreement or the Covenants Agreement, but this Agreement and the Covenants Agreement shall then be construed as if such unenforceable provision or provisions had never been contained herein or therein. If it is ever held that any restriction hereunder or under the Covenants Agreement is too broad to permit enforcement of such restriction to its fullest extent, such restriction shall be enforced to the maximum extent permitted by applicable law. This Agreement, the Covenants Agreement and any and all matters arising directly or indirectly herefrom or therefrom shall be governed under the laws of the State of New York, without reference to choice of law rules. Employer and Employee consent to the sole jurisdiction of the federal and state courts of New York. **EMPLOYER AND EMPLOYEE HEREBY WAIVE THEIR RESPECTIVE RIGHT TO TRIAL BY JURY IN ANY ACTION CONCERNING THIS AGREEMENT OR ANY AND ALL MATTERS ARISING DIRECTLY OR INDIRECTLY HEREFROM AND REPRESENT THAT THEY HAVE CONSULTED WITH COUNSEL OF THEIR CHOICE OR HAVE CHOSEN VOLUNTARILY NOT TO DO SO SPECIFICALLY WITH RESPECT TO THIS WAIVER.**

11. Acknowledgments. Employer and Employee acknowledge and agree that:

(A) By entering in this Agreement, Employee does not waive any rights or Claims that may arise after the date that Employee executes and delivers this Agreement to Employer;

(B) This Agreement shall not affect the rights and responsibilities of the Equal Employment Opportunity Commission (the "EEOC") or similar federal or state agency (e.g. NLRB, SEC., etc.) to enforce ADEA or other applicable laws, and further acknowledge and agree that this Agreement shall not be used to justify interfering with Employee's protected right to file a charge or participate in an investigation or proceeding conducted by the EEOC or similar federal or state agency. Accordingly, nothing in this Agreement shall preclude Employee from

filing a charge with, or participating in any manner in an investigation, hearing or proceeding conducted by, the EEOC or other similar federal or state agency, but to the maximum extent permitted by law, Employee affirms he or she shall not be entitled to recover any individual monetary relief or other individual remedies if such an administrative claim is made; [and]

(C) Nothing in this Agreement shall preclude Employee from exercising Employee's rights, if any (i) under Section 601-608 of the Employee Retirement Income Security Act of 1974, as amended, popularly known as COBRA, or (ii) Employer's 401(k) or pension plans.

12. Opportunity for Review.

(A) **Employee is hereby advised and encouraged by Employer to consult with his/her own independent counsel before signing this Agreement.** Employee represents and warrants that Employee: (i) has had sufficient opportunity to consider this Agreement; (ii) has read this Agreement; (iii) understands all the terms and conditions hereof; (iv) is not incompetent or had a guardian, conservator or trustee appointed for Employee; (v) has entered into this Agreement of Employee's own free will and volition; (vi) has duly executed and delivered this Agreement; (vii) understands that Employee is responsible for Employee's own attorney's fees and costs; (viii) has had the opportunity to review this Agreement with counsel of Employee's choice or has chosen voluntarily not to do so; (ix) understands the Employee has been given twenty-one (21) days to review this Agreement before signing this Agreement and understands that he or she is free to use as much or as little of the 21 day period as he or she wishes or considers necessary before deciding to sign this Agreement; (x) understands that if Employee does not sign and return this Agreement to Employer (Attn: **Erin Schettini, HR Manager** on or before November 27, 2017, Employer shall have no obligation to enter into this Agreement, Employee shall not be entitled to the Severance Amount set forth in Section 4 of this Agreement, and the Separation Date shall be unaltered; and (xi) understands that this Agreement is valid, binding and enforceable against the parties to this Agreement in accordance with its terms.

Agreed to and accepted by, on this 8th day of Nov., 2017.

EMPLOYEE:

_Barbara Soitomas_

Agreed to and accepted by, on this 9th day of NOV, 2017.

PALL CORPORATION

_Erin Schettini_

-5-

# **Exhibit B**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BARBARA J. TORTOMAS,<br><br>　　　　　Plaintiff,<br><br>　　　- against -<br><br>PALL CORPORATION,<br><br>　　　　　Defendant. | No. 18 CV 5098 (JMA)(SIL)<br><br>**STIPULATION OF DISMISSAL WITH PREJUDICE PURSUANT TO RULE 41(a)(1)(A)(ii)** |

　　　Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), Plaintiff Barbara J. Tortomas and Defendant Pall Corporation (the "Parties"), by and through their respective undersigned counsel, hereby stipulate and agree that all claims between the Parties have been amicably resolved and this action shall be DISMISSED WITH PREJUDICE, with each party to bear its own attorney's fees, expenses and costs.

_____
Gina R. Merrill
Anshel Joel Kaplan
Seyfarth Shaw LLP
620 8th Avenue, 32nd Floor
New York, New York 10018
T:  212-218-5500
F:  212-218-5526
E: gmerrill@seyfarth.com
E:  akaplan@seyfarth.com

**ATTORNEYS FOR DEFENDANTS**

_____
Steven J. Moser, Esq.
Moser Law Firm, P.C.
5 East Main Street
Huntington, NY  11743
T: 516-671-1150
F: 516-882-5420
E: smoser@moseremploymentlaw.com

**ATTORNEYS FOR PLAINTIFF**

Dated: November 16, 2020

2

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 16, 2020, I presented the foregoing document with the Clerk of the Court for filing and uploading to the CM/ECF system, which will send notification of such filing to all counsel of record.

                                        */s/ Anshel Joel Kaplan*
                                        Anshel Joel Kaplan